## HITT AND WADE *vs.* RUSH ET AL.

1. When there is a conflict in the testimony of two witnesses which cannot be reconciled, regard must be had, in determining which one is mistaken, to the capacity of the witnesses, their respective opportunities of knowing the facts to which they depose, and the nature of the facts deposed to, as calculated to impress themselves with more or less force on the memory.
2. A *bona fide* purchaser without notice from the husband, of a slave in his possession by parol gift from his father-in-law, is not affected by the husband's assent to a deed of gift by which the slave is settled on the wife and her children.

ERROR to the Chancery Court of Greene.

Heard before the Hon. W. W. MASON.

The defendants in error filed their bill in the Chancery Court of Greene county, against Hitt and Wade, alleging that, on the 10th of April, A. D., 1831, John Pearson, their maternal grand-father, then a resident of the State of South Carolina, executed a deed of gift, which was duly recorded in that State, by which he conveyed certain slaves, in the bill named, to Thomas H. Wade, as trustee, to the sole and separate use of his daughter, Martha Ann Rush, wife of James Rush; she to have the sole possession, use and control of said slaves during her natural life, and the remainder in the said slaves and their increase to go to her children who might be living at the time of her death; the said Martha having power to defeat the remainder, by disposing of said property by will, having obtained her husband's consent thereto in writing.

The bill avers the death of the said Martha, without having disposed of said slaves; that complainants are the persons designated in the deed as entitled to the remainder; that since the removal of the beneficiaries under the deed, from South Carolina to this State, and before the death of Mrs. Rush, one of the slaves mentioned in the deed, named Eve, and her increase, which compose the slaves now in controversy, viz: in 1839, came into the possession of said John M. Hitt, who refuses to deliver them to complainants, but claims them as his own; that the grantor, Pearson, is dead;

Hitt and Wade v. Rush et al.

that Wade, the trustee, resides in South Carolina, has acted negligently in not protecting complainants' interest, and in permitting said Eve and her children to remain in possession of Hitt.

The bill prays a decree for the slaves and an account of their hire; alleges that, in 1844, the complainants filed their bill, by said Hitt as their next friend, to remove Wade as trustee, and for the appointment of some suitable person in this State; that the court required, as a condition of its decree, that the next friend should give bond in the sum of $500, conditioned to abide such decree as should be made upon the appearance of Wade, he being a non-resident of this State; and avers that Hitt, combining with Wade, refuses to give the required bond, so that the decree has not been executed.

The defendant, Hitt, filed his answer, and afterwards a supplement thereto, and among many other grounds of defence, which it is unnecessary to state, inasmuch as they are not insisted upon in this court as grounds for reversal, averred that the negro woman Eve, who is the mother of the other slaves sued for, was given by John Pearson to James Rush, his son-in-law, anterior to the execution of the deed to Wade, the trustee; that said slave was delivered to Rush, and the gift perfected, before the alleged deed of gift was executed; and that on the 7th day of January, 1837, the defendant, Hitt, purchased said slave, for a full and fair consideration, of Rush, who held her under the previous gift, and not under the deed.

Whether the slave Eve was given to said James Rush, by John Pearson, and delivered before the 10th day of April, 1831, the date of the conveyance in trust to Wade, is the sole question argued before this court.

The Chancellor decreed in favor of the complainants, ordering the slave Eve and her increase to be delivered up to them, and that they recover their hire, &c.

BLISS & BALDWIN, for plaintiffs in error.
S. F. HALE, contra.

CHILTON, C. J.—The question before us is, whether the

slave Eve was given by John Pearson to James Rush, anterior to the execution of the deed by Pearson to Wade; and this depends upon the evidence, to which we will briefly allude. We have the testimony of one witness on each side. Grace H. O'Neal was examined on the part of the complainants, and testifies, that, in 1831, her father came from his residence in Fairfield District, in South Carolina, to Columbia, where she and her sister Martha Ann Rush resided, bringing with him the slaves mentioned in the deed to Wade, and there executed the deed, to which she is a subscribing witness; that Rush was then insolvent, and owned nothing in his own name; that his wife was a free dealer, and they were engaged in keeping tavern in Columbia, which was carried on in the name of the wife; that she was intimate with her sister, and often visited her; that Rush was present when the deed was made, and the girl, Eve, had not previously been in his possession. Rush's insolvency about that time is also proved by other witnesses.

On the other hand, George C. Pearson, the brother of the above named witness, states, that his father, John Pearson, actually gave this slave Eve to James Rush, two months and ten days before this deed to Wade was executed, and sent her by the witness from Fairfield District to Columbia, a distance of forty-five miles, with directions to deliver her to said Rush, which the witness did; that he was living with his father, had been well acquainted with the negroes named in the deed, and that on the 10th day of April, 1831, the date of said deed, the other slaves embraced in it were in Greene county in this State, under charge of an overseer; that said Pearson and the witness removed to Greene county in April or May, 1831, when the said George took the control of said slaves and others, and retained them until he made another and different disposition of them than that mentioned in the deed. This witness, upon a most elaborate examination, gives the history of the family of his father, and the various disposals of his property among his children, and evinces a very thorough acquaintance with his father's transactions, which he details with much particularity, and in such manner that, if incorrect, they could easily have been disproved. Yet, his testimony remains uncontradicted

in any particular, except so far as it conflicts with that of Mrs. O'Neal, his sister.

The Chancellor was of opinion, that her testimony, coupled with the evidence of Rush's insolvency, should prevail over his, and decreed for the complainants. We feel some hesitation in disturbing a decree predicated, like this, upon a conclusion as to the facts, and which, though it be found either way, leaves the mind embarrassed by some incertitude as to its correctness. But the law has wisely provided certain tests, by which we must try the evidence, to ascertain its weight, and by which we must be governed in adjudging its preponderance.

The legal presumption being in favor of innocence and honesty, the law does not justify the rash conclusion, that, because there is a seeming conflict between two witnesses in their testimony, one or the other has wilfully perverted the truth; but casts upon the court the duty of first endeavoring to reconcile the testimony, if this can be done, without resorting to strained and unnatural inferences in aid of either party.

Assuming, however, as in this case, that the conflict is real, and not merely seeming, and that the witnesses are equally honest and desirous of speaking the whole truth, then, as one or the other of them must have been mistaken, we must ascertain with which the mistake lies. To do this, we must look to the capacity of the witnesses, their respective opportunities of knowing the facts about which they depose, and the nature of the facts deposed to, as calculated to impress themselves with more or less force upon the memory. If, upon applying these tests, we can readily perceive how one may be mistaken, and that the other, if the testimony be untrue, must have committed perjury, the law inclines to the more charitable conclusion, that the one is mistaken rather than that the other has committed this crime. Guided by these rules, and being fully satisfied in this case that both Mrs. O'Neal and the witness Pearson were actuated by a sincere disire to speak the truth, we are pretty clear in the conclusion that she was mistaken, in that portion of her testimony in which she says that the negro Eve was not in the possession of James Rush before the 10th day of April, 1831,

and that she, with the other slaves mentioned in the deed to Wade, were brought to Columbia by her father and then delivered to the trustee. She was a married lady, residing in Columbia; and although she often visited her sister, Mrs. Rush, who resided in the same place, yet the negro Eve may have been there and she have known nothing about it, especially as her sister was engaged in keeping a public house, requiring the employment of a number of servants. But the testimony of Mrs. O'Neal, that Eve was not there before her father brought her on the 10th April, is of a negative character; she may have been there, as we have said, and this lady have been totally ignorant of the fact. On the other hand, George C. Pearson swears, that he took her there more than two months before. His testimony is affirmative, and is connected with an act performed by him well calculated to impress his memory. This, coupled with the facts that he lived with his father, was conversant with his business, removed the same year with him, and only some two months thereafter, to this State, goes strongly to show that he could not well be mistaken, either as to the fact of the gift and delivery of Eve by his father to James Rush, or the time when the gift was so made.

The testimony of Wade, the trustee, throws but little light upon the transaction. He says, he was sent for when the deed was executed, and desired to act as trustee under the deed; that some negroes were shown by Pearson, but he has no recollection what negroes. He thinks that James Rush removed to Alabama in 1833–'34 or '35, and that he acted as trustee until his removal, when he gave up to the family the deed, to take with them; and that the negroes were in possession of said Rush, by his (the trustee's) consent, for at least eight years, when they were removed by his consent from the State; so that, according to this witness, the negroes spoken of must have gone into Rush's possession in 1827, or before that period; but he is doubtless mistaken.

Upon the whole, we think it may safely be predicated of the testimony, that the slave Eve was given by John Pearson to James Rush, in February, 1831; that on the 10th of April of the same year, the deed to Wade was made, and this woman was included in it; that she was afterwards sold by

Rush, on the 7th day of January, 1837, to Hitt, the plaintiff in error, for a valuable consideration, he being a *bona fide* purchaser. Under such circumstances, even had James Rush consented to the declaration of trust made by John Pearson, in favor of Rush's wife and children, such consent could not operate to defeat the title of a *bona fide* purchaser for a valuable consideration without notice, as Rush retained the possession of the slave and sold her as his own property. If his consent to Pearson's deed, or rather his being present when it was made, and his failure to object, (which is the only evidence of his consent,) could operate as a parol declaration of his intention to give; yet the evidence fails to show a delivery by him, which is required to perfect such gift. The fact that he was regarded as insolvent, while it may go as a circumstance explanatory of the gift to a trustee for the benefit of Mrs. Rush and her children, is not inconsistent with the idea of a previous gift to Rush himself. At all events, we do not think it should be allowed much weight, against the positive testimony of the witness on this subject. In view of the whole testimony, we think the complainants, on whom the burthen of proof rested, have failed to make out their case, and that Rush was the owner of Eve and her increase when he sold to Hitt.

Our conclusion is, that the decree of the Chancellor should be reversed, and the bill must be here dismissed.

Let the complainants in the court below pay the costs of this court and of the Chancery Court.